UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON E. MORRIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DALY, et al.,<br><br>　　　　Defendants. | No. 2:12-cv-2845 JAM AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

　　Plaintiff is a state prisoner who proceeds pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's verified Second Amended Complaint (SAC), filed November 13, 2013, on plaintiff's First Amendment claims that defendants Daly, Pereira and Donahoo, all Appeals Coordinators, retaliated against plaintiff for utilizing the prison grievance system, by "arbitrarily cancelling and destroying his grievances and exhibits [and] threatening to bar plaintiff from filing grievances." See ECF No. 19.

　　Presently pending is defendants' motion for summary judgment on the merits of plaintiff's claims. Alternatively, defendants contend that they are entitled to qualified immunity. See ECF No. 32. Defendants' motion is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, this court recommends that defendants' motion for summary judgment be granted.

1

II. Plaintiff's SAC and the Parties' Briefing

Plaintiff's verified SAC makes the following allegations, for which plaintiff generally seeks "monetary relief," ECF No. 19 at 4-5:

> Filing administrative grievances and initiating litigation are protected activities, and it is impermissible for prison officials to retaliate against prisoner for engaging in these activities. From 2009 to this present date [November 9, 2013], guards/appeals coordinators Kevin Daly, Bryan Donahoo and Pereira have retaliated against this plaintiff by (1) arbitrarily cancelling and destroying his grievances and exhibits, threatening to bar plaintiff from filing grievances, (2) because he (3) exercised his First Amendment rights to file prison grievances and otherwise seek access to the legal process, and that (4) beyond imposing those tangible harms, the guards' actions chilled [plaintiff's] First Amendment rights and (5) were not undertaken in narrowly tailored furtherance of legitimate penological purposes. Guards/appeals coordinator Pereira has done this seven (7) times and both Kevin Daly and Bryan Donahoo more than five (5) times respectively.

Upon screening the SAC pursuant to 28 U.S.C. §1915A, this court found that it states a First Amendment claim against defendants Daly, Pereira and Donahoo "for retaliation against plaintiff for filing administrative grievances and initiating litigation."[1] See ECF No. 20 at 1. Defendants answered the SAC. ECF No. 27. Discovery proceeded through October 14, 2014. ECF No. 28. On April 6, 2015, defendants filed the pending motion for summary judgment, ECF No. 32, supported by their verified declarations and exhibits, see ECF Nos. 33-5. Plaintiff responded to defendants' statement of undisputed facts and filed an unverified opposition with exhibits, ECF No. 42, but did not file a declaration. Defendants filed a reply. ECF No. 46.

III. Legal Standards

A. Legal Standards for Sustaining a Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

---

[1] As has become clear in evaluating the merits of defendants' motion for summary judgment, it would have been appropriate, alternatively, to dismiss plaintiff's SAC with leave to file a further amended complaint that better substantiated his claims. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (fn. and citations omitted).

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Filing prison grievances and pursuing civil rights litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in those activities. Rhodes, 408 F.3d at 567.

A plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531(transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim). Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive. However, not every allegedly adverse action will support a retaliation claim. See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this").

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's challenged conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City School District v. Doyle, 429 U.S. 274, 287 (1977)). Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532). Mere allegations of retaliatory motive or conduct will not suffice. A prisoner must "allege specific facts showing

1  retaliation because of the exercise of the prisoner's constitutional rights." Frazier v. Dubois, 922
2  F.2d 560, 562 n.1 (10th Cir. 1990).

           B.      Legal Standards for Summary Judgment

       Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

       When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

       If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the

existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[2]

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party."

---

[2] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial); see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

1    Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).
2    It is the opposing party's obligation to produce a factual predicate from which the inference may
3    be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
4    aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing
5    party "must do more than simply show that there is some metaphysical doubt as to the material
6    facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the
7    nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation
8    omitted).
9    In applying these rules, district courts must "construe liberally motion papers and
10   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."
11   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly
12   support an assertion of fact or fails to properly address another party's assertion of fact, as
13   required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion
14   . . . ." Fed. R. Civ. P. 56(e)(2).

15                    C.    Legal Standards for Exhausting Administrative Remedies

16   Defendants seek summary judgment on the merits of plaintiff's retaliation claim, which
17   involves the processing of prisoner grievances. Accordingly, the legal framework for the
18   exhaustion of prisoners' administrative remedies provides relevant context.
19   The Prison Litigation Reform Act (PLRA) requires that prisoners exhaust "such
20   administrative remedies as are available" before commencing a suit challenging prison
21   conditions. 42 U.S.C. § 1997e(a). Regardless of the relief sought, a prisoner must pursue an
22   appeal through all levels of a prison's grievance process as long as some remedy remains
23   available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy
24   remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,'
25   and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th
26   Cir. 2005) (original emphasis) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). Hence, "[a]n
27   inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in
28   ////

order to exhaust his administrative remedies." Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010).

The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

In California, CDCR regulations authorize prisoners to grieve or "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). A prisoner commences an appeal by submitting a CDCR Form 602 that "describe[s] the specific issue under appeal and the relief requested." Id. § 3084.2(a). The form limits the prisoner to "one issue or related set of issues" and "to the space provided." Id. § 3084.2(a)(1), (2). The form directs that the prisoner "shall list all staff member(s) involved and describe their involvement in the issue." Id. § 3084.2(a)(3). Currently, a prisoner must submit his appeal within 30 calendar days of "[t]he occurrence of the event or decision being appealed;" "[u]pon first having knowledge of the action or decision being appealed;" or "[u]pon receiving an unsatisfactory departmental response to an appeal filed." Id. § 3084.8(b).

Each prison is required to have an "appeals coordinator" whose job it is to "screen all appeals prior to acceptance and assignment for review." Id. § 3084.5(b). The appeals coordinator may refuse to accept an appeal, by "rejecting" or "cancelling" it. Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator"). According to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies." Id., 3084.1(b).

An appeal may be "rejected" for several reasons, including "fail[ure] to demonstrate a material adverse effect on [the prisoner's] welfare;" "[t]he appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation;" "[t]he appeal involves multiple issues that do not derive from a single event, or are not directly related and

1 cannot be reasonably addressed in a single response due to this fact;" and failure to submit the
2 appeal "on the departmentally approved appeal forms." Id. § 3084.6(b).  When an appeal is
3 "rejected," the appeals coordinator is required to "provide clear and sufficient instructions
4 regarding further actions the inmate . . . must take to qualify the appeal for processing." Id.,
5 § 3084.6(a)(1).

6       An appeal may be "cancelled" for other reasons, including that the prisoner failed "to
7 correct and return a rejected appeal within 30 calendar days of the rejection;" the appeal
8 duplicates a "previous appeal upon which a decision has been rendered or is pending;" the
9 prisoner "continues to submit a rejected appeal while disregarding appeal staff's previous
10 instructions to correct the appeal including failure to submit necessary supporting documents;"
11 and "[t]ime limits for submitting the appeal are exceeded even though the [prisoner] had the
12 opportunity to submit within the prescribed time constraints." Id., § 3084.6(c).  When an appeal
13 is "cancelled," the prisoner "shall be notified of the specific reason(s) for the . . . cancellation."
14 Id., § 3084.5(b)(3).[3]

15       If the appeals coordinator allows an appeal to go forward, the inmate must pursue it
16 through the third level of review before it is deemed "exhausted." Id. § 3084.1(b) ("all appeals
17 are subject to a third level of review, as described in section 3084.7, before administrative
18 remedies are deemed exhausted").

19       The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be
20 brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a
21 prisoner confined in any jail, prison, or other correctional facility until such administrative
22 remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Although "the PLRA's
23 exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S.

---

[3] There is no requirement to tell the prisoner how to correct the "cancelled" appeal because cancellations refer to defects that cannot be corrected.  The only way for a prisoner to proceed with a cancelled appeal is to show that the cancellation was made in error (or that new information shows that the appeal may now be processed). Cal. Code Regs. tit. 15, § 3084.6(a)(3) ("a cancelled appeal may later be accepted if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

8

516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute. As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available."). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").[4]

Moreover, as recently held by the Ninth Circuit Court of Appeals, if a prisoner fails to comply with procedural requirements in pursuing his appeal, but prison officials address the merits of the appeal nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies. See Reyes v. Smith, 810 F. 3d 654 (9th Cir. Jan. 12, 2016).

IV. Facts

The court has reviewed Defendants' Statement of Undisputed Facts (DSUF), ECF No. 32-

---

[4] When a motion for summary judgment is premised on the prisoner's alleged failure to exhaust administrative remedies, the Ninth Circuit has laid out the following analytical approach, as set forth in Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014), cert. denied sub nom. Scott v. Albino, 135 S. Ct. 403 (2014) (citation and internal quotations omitted):

> [T]he defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy. . . . Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him. However, . . . the ultimate burden of proof remains with the defendant.

If a court concludes that a prisoner failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice. See Jones v. Bock, supra, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

9

3; plaintiff's response thereto, designated herein Plaintiff's Disputed Facts (PDF), ECF No. 42 at 11-42; defendants' respective declarations, ECF Nos. 33-5; and the parties' respective exhibits. The court finds that the following facts are undisputed by the parties or, following the court's review, are deemed undisputed for purposes of the pending motion. Pertinent allegations are also noted.

1. Plaintiff Leon Morris has, at all relevant times, been incarcerated under the authority of the California Department of Corrections and Rehabilitation (CDCR) at California State Prison, Sacramento (CSP-SAC).

2. Defendants Daly, Pereira, and Donahoo worked as Appeals Coordinators at CSP-SAC during various time periods relevant to this lawsuit.

3. In late January 2011, CDCR headquarters began implementing regulations requiring the use of new inmate appeal documents, including Form 22 and amended Form 602. During this transition, appeals and correctional staff, as well as inmates, were learning the new process and changes. Prisons were directed to post posters and hand out pamphlets that notified and educated inmates about these changes to the appeals process, and to make the new forms available.

4. The parties dispute whether inmates and staff in plaintiff's housing unit, Psychiatric Services Unit II, Bldg. 4 (PSU-II-4), were so informed. Plaintiff contends that inmates and staff at PSU-II-4 were not informed of the changes or provided the new forms until "several months after January 2011." See PDF Nos. 6, 8, 10. Plaintiff avers that "absolutely nothing was posted nor pamphlets handed out to the prisoners anywhere in PSU II. Not even the guards knew anything about the new forms nor handed out anything whatsoever." PDF No. 8.

5. The Form 22 is intended to function similarly to the "informal" level of review provided in prior Form 602. Inmates are required to use and exhaust a Form 22 to appeal minor issues that can be informally resolved, such as lack of showers, hygiene or stationery supplies, or inadequate food. Certain appeal issues/categories, such as serious inmate disciplinary, classification, transfers, or program, bypass the informal level and do not require the use of a Form 22. The Form 22 is in "triplicate" format, thus allowing the inmate to keep a copy for his own records to demonstrate that he submitted it to staff.

6. Plaintiff avers that, in practice, he "experienced serious problems getting guards to sign the new Form 22 and when plaintiff filed a 602 staff complaint against the guards for refusing to sign the Form 22, [defendant] appeals coordinators cancelled it. When plaintiff was fortunate enough to get a guard to sign the Form 22, the recipient refused to respond and return the form and that occurred 9 out of 10 times." PDF No. 10.

7. Also during this time period, the CSP-SAC Appeals Office began to transition from using an "Inmate/Parolee Appeal Screening Form" (a single-page form with boxes to check providing instructions to inmates on how to cure their appeal deficiencies), to using a new CDC Form 695 (a computer-generated letter advising inmates of their appeal deficiencies and how to correct them). Typically, an Appeals Coordinator uses a Form 695 if he screens out an appeal, and returns both the Form 695 and the original Form 602 to the appropriate building officer to then return to the inmate; the Appeals Office does not typically keep copies of the Form 695 or the appeal. Until approximately mid-2012, appeals that were screened out were not assigned an appeal log number.

8. Plaintiff avers (in his opposition filed August 19, 2015) that "the process of giving the screened out 602 to the appropriate building officer (the Sgt.) to return to the inmate started only a few months ago, not mid-2012." PDF No. 12.

9. Defendants aver that their work responsibilities as Appeals Coordinators "included, but were not limited to, reviewing inmate appeals, screening out or canceling appeals that did not meet the requirements under CDCR policy delineated in the California Code of Regulations, title 15, sections 3084-3086, which govern inmate administrative appeals, and forwarding proper appeals to appropriate CDCR staff for responses, investigations, or interviews." DSUF No. 3.

10. Plaintiff contends generally that defendants misused their authority to screen out and cancel appeals as a means to retaliate against inmates and shield prison officials from wrongdoing, and did so in this case. Plaintiff contends that defendants failed to adhere to the new appeal procedures but instead opted "to do whatever they wanted." PDF Nos. 3, 7.

11. Plaintiff submitted 104 appeals at CSP-SAC for the time period September 2007 through January 2014, according to CDCR's electronic database, the Inmate/Parolee Appeals

11

Tracking System – Level I & II (IATS).  Plaintiff contends that "the true number is far less due to the fact that all of those are appeals [that plaintiff ] was forced to jump through the various hoops defendants imposed and forced plaintiff to climb through before cancelling plaintiff's staff complaint[s], proving the filing is nothing more than an exercise of futility."  PDF No. 4.

12.   Of these 104 appeals, defendants have identified twenty (20) appeals that one or more of them reviewed, if only in part.  These include Forms 602, Forms 22, and Forms 695, and related matters produced by plaintiff at his deposition.  Defendants have submitted copies of each of these twenty appeals, and described how each was processed pursuant to CDCR regulations. See ECF No. 32 (summarizing how each appeal was processed and why), and ECF Nos. 33-35 (declarations and exhibits submitted by each defendant).

13.   None of the twenty identified appeals were exhausted.  With the exception of the two appeals detailed below, the remaining eighteen appeals addressed a variety of matters, including plaintiff's challenges to anticipated cellmates and double celling; allegedly inadequate security checks; the denial of notary services; failure to provide legal copies; missing property; denial of showers and use of clippers; request for a medical pillow; failure of kitchen staff to wear hair nets and properly cover food; ignoring plaintiff's hunger strike; noise and cold from fans and blowers; failure to take plaintiff to his mental health appointments and to group sessions; and privacy during medical appointments.

14.   Only two of the twenty identified appeals can reasonably be construed as a direct challenge to the processing of plaintiff's appeals by one or more of the defendants, and they are therefore described in detail:

(1) First, in a Form 602 appeal, entitled "Appeals Coordinator Pereira," and designated by staff "LEGAL, Processing of Appeals, 03/14/2011," signed March 13, 2011, plaintiff alleged that defendant Pereira "makes it his policy to shield his corrupt cohorts from 602's with constant screen-out[s]. For frivolous and non-existing reasons."  Plaintiff requested that defendant Pereira "stop shielding his corrupt cohorts with screen-out or step aside and give up the position of appeals coordinator to someone who will at least be impartial."

The appeal was screened out on March 23, 2011, with a Form 695 signed by defendant Daly, which informed plaintiff that his appeal failed to comply with Cal. Code Regs. tit. 15, § 3084.6(b)(6), because it "makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation."

12

Plaintiff wrote his disagreement on the Form 695 (stating that Pereira "did it against my 602 against your Capt. Carter, 4 bldg. guards for retaliation, the tower guards for using the fan and blower to drown out my call for help and others, Now, that is specific"), and submitted it.

The appeal was again screened out based on Section[5] 3084.6(b)(6), with a Form 695 signed by defendant Daly on April 26, 2011.

Plaintiff wrote his disagreement on the form (stating that "this 602 was sent in March, you held it over a month. Why?"), and submitted it.

The appeal was again screened out based on Section 3084.6(b)(6), with a Form 695 signed by defendant Donahoo on June 2, 2011.

Plaintiff returned the form on June 14, 2011, with the notation, "That is not a general allegation. It's clear as it can be. Let's use you as an example. You're doing just [] as he did, shielding."

The next day, June 15, 2011, defendant Donahoo notified plaintiff that his appeal was cancelled at the First Level Review pursuant to Section 3084.6(c)(3) (authorizing cancellation of appeal if the inmate "continues to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal including failure to submit necessary supporting documents, unless the inmate . . . provides . . . a reasonable explanation of why the correction was not made or documents are not available"), with the notation, "You continue to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal." See Daly Decl., ¶ 46 and Ex. E (ECF No. 35-2 at 3-9); see also Pl. Ex. D (ECF No. 42 at 89-93).

(2)  Second, in a Form 602 appeal, entitled "Donahoo Cancelling 602," and designated by staff "LEGAL, Processing of Appeals, 08/27/2012," signed August 27, 2012, plaintiff alleged that "Appeals Coordinator Donahoo compelled me to file repeated CDCR-22's. Then when I finally file[d] the 602, he cancels it stating time restraints expired. Which was [his] fault, not mine." Plaintiff requested that "My 602's not [be] cancelled when compelled to file repeated CDCR-22's. And Donahoo and Daly stop shielding their cohorts from 602's against them."

The appeal was screened out on September 4, 2012, with a Form 695 signed by defendant Daly, on the following three grounds:

> a. Failure to comply with Section 3084.6(b)(2), because it "failed to demonstrate a material adverse effect upon [plaintiff's] welfare" (with further explanation).

> b. Failure to comply with Section 3084.6(b)(6), because it "makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation."

---

[5]  All further "Section" references are to Title 15 of the California Code of Regulations.

c. Failure to comply with Section 3084.6(b)(7), because it "is missing necessary supporting documents as established in CCR 3084.3."

Plaintiff was further informed that, "[i]f you are challenging a specific cancellation, it is incumbent on you to support your claims and attach [the] cancellation to [the] new appeal, as CDC 695 describes," which provides in part that "a separate appeal can be filed on the cancellation decision."

Plaintiff wrote his disagreement on the Form 695, and submitted it on September 28, 2012, asserting:

> Again you held this for three weeks. Why[?] What kind of evil game or tactic are you deploying? The adverse effect is me not being afford[ed] redress and violation of my 1st Amendment right to file a complaint. This complaint states a clear fact as did your worthless CDCR 22, it's no general allegation, you and Daly alway[s] cancel and shield 602 complaint against your libertine cohorts. It's not missing [] documentation. You have copies use them. The statement on this 602 complaint is quite clear. Here are the Log Nos. [two provided]. You cancelled them and a lot more all for fraudulent reasons in order to shield your libertine reprobate cohorts.

The appeal was again screened out with a Form 695 signed by defendant Daly on October 5, 2012, on the grounds that it failed to comply with Section 3084.6(b)(7) (missing necessary supporting documents); and Section 3084.6(b)(6) (general allegation without supporting facts); and because specific cancellation decisions that appeared to be challenged were inadequately identified and described.

Plaintiff again wrote his disagreement on the form and submitted it on October 12, 2012, asserting:

> This is no general allegation, you, Donahoo and your predecessor Pereira are cancelling 602s against your libertine cohorts shielding them and violating my 1st Amendment right to file a 602 complaint. That fact is quite clear. The 602 complaint was about your libertine cohorts destroying my personal prop. in retaliation for filing a 602 complaint the date was 8-21-2012. The other was filed 7.28.2012 and two of your cohorts, left not left (sic) but intentionally took off the cover on my food leaving it open for flies and other insects to feast on it leaving me unable to [eat] any of it. You have the Log # and [there] are an untold # more, I'm just citing these two.

On October 26, 2012, defendant Daly notified plaintiff that his appeal was cancelled at the First Level Review pursuant to Section 3084.6(c)(3), with the notation that "You continue to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal. [¶] Refer to previous CDC 695s dated 9/4/12 and 10/5/12 for instructions which were not adhered to." See Daly Decl., ¶ 46 and Ex. J (ECF No. 35-4 at 9-15); see also Pl. Ex. D (ECF No. 42 at 89-93).

15. Plaintiff does not allege that any of his appeals reviewed by defendants during the relevant period, including his appeals filed against defendants herein, reflect an attempt to exhaust his administrative remedies on his retaliation claims pursued in this action.

V. <u>Analysis</u>

In assessing the merits of a summary judgment motion, the court must examine the parties' evidence supporting and refuting each element of plaintiff's retaliation claim. Construing the record in the light most favorable to plaintiff, the evidence demonstrates that, in response to plaintiff's exercise of his right to grieve prison conditions, defendants routinely (or nearly so) rejected and eventually cancelled plaintiff's appeals. This finding supports the first and third elements of plaintiff's retaliation claim, specifically, that defendants responded adversely to grievances submitted by plaintiff in the exercise of his First Amendment rights. See Rhodes, 408 F.3d at 567-68. Missing, however, is any evidence to support plaintiff's allegations that defendants' challenged conduct was motivated by retaliation against plaintiff *because* he exercised his First Amendment rights. This second element of a retaliation claim requires evidence of a causal connection between the first and third elements. See id.

Defendants have each submitted a sworn declaration, with exhibits, explaining how their respective processing of each of the twenty appeals submitted by plaintiff during the relevant period was consistent with CDCR regulations. See Pereira Decl., ECF No. 33; Donahoo Decl., ECF No. 34; and Daly Decl., ECF No. 35. Defendants demonstrate that "their handling of Morris's deficient appeals were in accordance with Title 15 provisions regarding inmate appeals and the introduction of new Form 22 and new CDCR 602, and promoted the legitimate penological interest of providing all inmates with an efficient and effective appeal process." ECF No. 32-2 at 27. Thus, defendants, as the moving parties, have met their burden of submitting authenticated evidence showing that they properly processed plaintiff's appeals in accordance with CDCR regulations, and that the rejection and/or cancellation of each matter was in furtherance of legitimate penological goals. See Celotex, 477 U.S. at 323.

The burden therefore shifts to plaintiff, as the nonmoving party, to establish that there is a genuine issue for trial. Celotex, at 324. It is plaintiff's burden to demonstrate "that there were no

15

1 legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808,
2 that is, "plaintiff bears the burden of pleading and proving the absence of legitimate correctional
3 goals," id. at 806 (citing Rizzo, 778 F.2d at 532).  It is not plaintiff's burden, on summary
4 judgment, to conclusively demonstrate retaliation, only to "point to some facts in the record that
5 demonstrate a genuine issue of material fact[.]"  Reese v. Jefferson School Dist. No. 14J, 208
6 F.3d 736, 738 (9th Cir. 2000) (citations omitted).

Plaintiff has not filed a sworn declaration or verified opposition; his only pertinent verified allegation, set forth in the SAC, is that defendants engaged in the challenged conduct "because" of plaintiff's protected conduct, merely mirroring the elements of a retaliation claim. See ECF No. 19 at 4; see also Rhodes, 408 F.3d at 567-68.  See also n.1, supra.

Plaintiff's responses to defendants' undisputed facts provides little more – plaintiff relies on most of the same exhibits submitted by defendants (copies of plaintiff's appeals and official responses thereto) to generally assert that defendants shielded one another and coworkers from wrongdoing, "misused their authority," did "whatever they wanted," and forced plaintiff "to jump through various hoops," resulting in "nothing more than an exercise in futility."  See generally ECF No. 42 at 11-42.  Plaintiff alleges that he "did everything right" and "everything that was requested," but maintains that he "didn't need to follow instructions that were clearly wrong."  Id. Significantly, however, plaintiff has not identified any specific conduct that allegedly illustrates defendants' retaliatory motive against plaintiff *because* he was utilizing the appeals process. Thus, plaintiff has failed to allege any "specific facts showing retaliation because of the exercise of [plaintiff's] constitutional rights."  Frazier, supra, 922 F.2d at 562 n.1.

Plaintiff's unverified opposition also fails to support his claims.  Plaintiff alleges therein that defendants' screen-outs were "absurd," "a ruse," "a farce," and consisted of "useless" and "worthless" "rhetoric" and "innuendos."  See generally ECF No. 42 at 1-10, 43-4.  Plaintiff speculates, "Why if not retaliation?"  Id. at 3.  He concludes, ECF No. 42 at 10:

> Everything they've said is a lot of rhetoric, innuendos, and lies outright.  They know everything done to me by those criminals was acts of retaliation.  They're just shocked and surprised that unlike other victims I've attempted to stand up and fight; look for some justice. . . .

Although defendants' challenged conduct demonstrates a pattern of rejecting and ultimately cancelling plaintiff's appeals, plaintiff has submitted no evidence supporting a reasonable inference that the exercise of his First Amendment rights was a "substantial" or "motivating" factor behind defendants' challenged conduct. See Sorrano's Gasco, supra, 874 F.2d at 1314. The record before the court does not support such an inference. Nor has plaintiff submitted any evidence supporting a reasonable inference that defendants' challenged conduct did not advance legitimate penological goals. Courts must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). Thus, plaintiff has failed to demonstrate a genuine dispute of material fact concerning defendants' motivation for their challenged conduct. For these reasons, this court is compelled to recommend that defendants' motion for summary judgment be granted on the merits.[6]

In the absence of any evidence of retaliatory motive, this action appears to reflect only plaintiff's frustrations in attempting to exhaust appeals on his several substantive claims. However, prison officials are not required under federal law to process inmate grievances in a specific way or to respond to them in a favorable manner. Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Even the non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann, 855 F.2d at 640; see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). At all times plaintiff retained the option of commencing a civil action on a specific substantive claim that he had attempted to exhaust through the prison's grievance system but for which he contends administrative remedies were effectively unavailable. See Sapp, 623 F.3d at 822-24; Nunez, 591 F.3d at 1224; Brown, 422 F.3d at 935. Instead, plaintiff decided to pursue this "shotgun" civil

---

[6] Therefore, this court does not reach defendants' alternative qualified immunity argument.

rights action, broadly challenging defendants' responses to all of his relevant appeals. This approach was miscalculated in the absence of any evidence to overcome defendants' evidence that their challenged conduct advanced legitimate penological goals and was not motivated by retaliatory animus.

VI.     Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, ECF No. 32, be granted, and judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2016

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE